UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LVI ENVIRONMENTAL SERVICES OF NEW ORLEANS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-649** |
| **QUEST DIAGNOSTICS INC.** | **SECTION "L" (2)** |

**ORDER AND REASONS**

Before the Court are LVI Environmental Services of New Orleans, Inc. ("LVI") and Commerce and Industry Insurance Company's ("Commerce") Motion for Summary Judgment with Respect to Quest Diagnostics Incorporated's ("Quest") Counterclaim (Rec. Doc. No. 54) and Quest's Cross Motion for Summary Judgment on the Issue of Indemnity and Liability in its Counterclaim (Rec. Doc. No. 59). For the following reasons, LVI and Commerce's motion is DENIED, and Quest's motion is GRANTED in part and DENIED in part.

**I.      Factual and Procedural Background**

This case concerns a contract entered into on September 16, 2005 between Quest and LVI, which provided for LVI to perform certain emergency remediation work at Quest's diagnostic laboratory damaged during Hurricane Katrina. The remediation work took place at the laboratory, located in Metairie, Louisiana, between September 17, 2005 and October 11, 2005.

On February 14, 2006, LVI filed a complaint against Quest for breach of contract, alleging that Quest failed to pay $586,380.53 for the remediation work performed, though the

1

contract required payment within 30 days of the final invoice. LVI also claimed approximately $40,000 in additional services had not yet been billed at the time of the complaint's filing. Alternatively, LVI asserted that Quest failed to pay on an open account or that Quest had been unjustly enriched to its detriment.

Quest subsequently filed a counterclaim against LVI and made a third party demand against LVI's insurer Commerce. Quest contends that LVI performed work beyond the scope of the contract and which it was not authorized by Quest to perform. Quest additionally states that though the contract provided that Quest would be billed weekly, Quest did not receive its first bill until twenty days after work began and the bills were greatly overstated. Quest also contends that though it had an oral agreement with LVI to inventory and catalogue the laboratory's contents prior to remediation, LVI failed to do so, leading to damages sufficient to offset any payments allegedly owed. Quest thus alleges negligence for property damaged or lost due to LVI's improper handling, breach of contract, intentional misrepresentation and fraud. It argues that LVI is liable for the full extent of damages and Commerce is jointly, severally, and/or solidarily liable with LVI.

LVI subsequently filed a motion for summary judgment regarding Quest's counterclaim and third party demand (Rec. Doc. 54) and a motion for summary judgment on its claim against Quest (Rec. Doc. 56). Quest shortly thereafter filed a partial motion for summary judgment on the issues of indemnity and liability in its counterclaim (Rec. Doc. 59). Commerce also joined in LVI's motion for summary judgment on Quest's counterclaim and adopted LVI's argument in opposition to Quest's motion for summary judgment on the counterclaim. On November 27, 2006, LVI filed a motion to dismiss its claims against Quest, which the Court granted (Rec. Doc.

102).  However, Quest's counterclaim against LVI and third party demand against Commerce remain.  Consequently, LVI's motion for summary judgment on its claim was denied as moot, but the two motions regarding Quest's counterclaim remain to be decided.

## II.     The Contract and Provisions at Issue

The remediation contract, titled "Emergency Service Contract" (the "Contract"), is a two-page document executed by the parties on September 16, 2005.  The first page comprises a boilerplate list of rates that LVI charges for consumables, labor and equipment and also includes a section which permits the parties to include a brief summary of the scope of work to be performed in the particular project at issue.  (Contract 1).  The second page lists boilerplate terms and conditions.  *Id.* at 2.

The description of work to be performed on the Contract's first page specifies that its initial scope involves the "installation of drying equipment with a primary attention on the owner's [Quest's] equipment."  *Id.* at 1.  The description further provides that LVI will confer with the owner and insurance adjuster to further define the scope of work for property remediation, bio hazards and cleaning.  *Id.*  Furthermore, after the general scope has been defined by the parties, the Contract states that LVI will provide budget pricing upon request.  *Id.*  Lastly, the paragraph states that the parties agree that LVI is responsible for the testing and defining of hazards at the site to ensure proper crew training and that additional work may arise upon the owner's directions after review of recommendations by the parties.  *Id.*  Above this language, customized to provide for the scope of work in a particular contract, the following boilerplate language appears: "LVI and Customer may make changes in the work to be performed hereunder by written CHANGE ORDER signed by both parties."  *Id*.

3

The boilerplate terms and conditions on the second page contain the following paragraph regarding the Contract's comprehensiveness:

> 16. <u>Entire Agreement.</u>   This Contract and the Exhibits hereto comprise the complete agreement of the parties respecting the services to be performed.  No engagements, promises, representations, or warranties have been made by either party except as expressly stated in this Contract and its Exhibits, and the parties hereby expressly disclaim all implied warranties.  All modifications to the Contract shall be in writing, signed by both parties hereto.

*Id.* at 2, §16.  The second page also includes the following provisions regarding best efforts, indemnity and consequential damages that are relevant for purposes of the two instant motions:

> 7. <u>Best Efforts</u>.   LVI and Customer acknowledge that the property which is subject of the Work may have been involved in a fire, flood, or other catastrophe.  LVI will perform the work on a "best efforts" basis, but cannot, and therefore does not, guarantee or warrant that any of the property will be operational or free from defect following completion of the Work.
> ....
>
> 11. <u>Indemnity.</u>   Each party agrees to indemnify and hold harmless the other party hereto...from and against any and all claims, demands, causes of action and liabilities of any nature, whether for damages to property, and/or the conditions to which this Contract pertains, to the extent that any such claim, demand, cause of action and/or liability is attributable to the breach of contract or other fault of the indemnifying party.  Customer on its behalf and on behalf of including but not limited to Owners, Management Companies, Tenants and Occupants indemnifies LVI against loss or damage to personal property and/or content during the performance of services within the areas of remediation.
> ....
>
> 15. <u>No Consequential damages.</u>   No party shall in any action or proceeding or otherwise assert any claim for consequential damages against any other party to this Contract on account of any loss, cost, damage or expense which such party may suffer or incur because of any act or omission of any other party to this Contract or its agents or employees in the performance of a party's obligations under this Contract, or any other cause of action (including negligence) arising out of or related to transactions in connection with this Contract, or otherwise, and each party expressly waives any such claims.
> ....

*Id.* at §§ 7, 11 & 15.

The parties concur that no exhibits were attached to the Contract, and there is no dispute that the parties never made a written modification nor executed a change order.

## III.     Motion for Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The party that moves for summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has carried this burden, the non-moving party must establish that specific facts exist which indicate a genuine issue remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 588 (1986). An issue is genuine if a rational trier of fact could find in favor of the non-moving party after review of the record. *Id.* In determining which facts are material, the court looks to the substantive law. "[F]acts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party fails to carry its burden, summary judgment in favor of the moving party is appropriate.

## IV.     LVI and Commerce's Motion for Summary Judgment with Respect to Quest's Counterclaim

In their Motion for Summary Judgment on Quest's Counterclaim, LVI and Commerce argue that Quest is contractually barred from recovery of any damages arising from work performed due to the Contract provisions addressing indemnity and consequential damages.

Though LVI and Commerce state that they are uncertain whether Quest seeks consequential damages, they state that the contractual provision on consequential damages clearly prohibits recovery for such damages. Regarding indemnity, LVI and Commerce claim that the Contract contains a general indemnity provision, as set forth in the first sentence of the paragraph regarding indemnity, and a specific indemnity provision regarding damage to Quest's property, as set forth in the second sentence of the indemnity paragraph. LVI and Commerce argue that the second sentence of the Contract's indemnity paragraph clearly provides that Quest must indemnify LVI against loss or damage to personal property and/or content within the remediation area while services are being performed, however caused, even if the loss or damage results from LVI's own negligence. LVI and Commerce argue that a different interpretation would render the second sentence virtually meaningless because all non-negligent actions are covered by the general indemnity provision in the first sentence of the indemnity paragraph.

In regards to Quest's claims for breach of contract, intentional misrepresentation and fraud, LVI and Commerce claim that Quest's allegations are at best defenses to LVI's claims in chief, rather than claims relating to physical damage to Quest's property. Thus, LVI and Commerce contend that the only viable claim set forth by Quest is its negligence claim for property damage, which Quest is barred from asserting pursuant to the second sentence of the indemnity provision.

Quest responds that LVI misinterprets applicable law regarding the interpretation and application of indemnity clauses. Specifically, Quest contends that the Contract was executed for the specific purpose of protecting Quest's property and this purpose will be contravened if the indemnification provisions are interpreted in the manner LVI and Commerce advocate.

Quest argues that LVI and Commerce's method of interpretation is faulty because they seek to interpret the entire indemnity paragraph by focusing only on the second sentence, rendering the first sentence and the Contract's purpose meaningless.  Quest argues that it is entirely reasonable to interpret the second sentence to provide that if LVI used its best efforts to protect Quest's property, Quest would indemnify LVI for the defects or loss of operation.  Quest also points to the Contract clause prohibiting recovery from consequential damages and states that if this provision is examined together with the indemnity provision, the Contract expressly and unequivocally provides that LVI must indemnify Quest for direct and actual damages, including those to property caused by LVI's breach of contract or negligence.  In any event, Quest claims that the second sentence of the indemnity clause is ambiguous and must be interpreted against LVI because the language is standard in LVI's contracts.

**V.     Quest's Cross Motion for Summary Judgment on Issues of Indemnity and Liability in its Counterclaim**

In its motion, Quest claims that it is entitled to summary judgment on the issues of LVI's indemnity obligation and liability as no genuine issues of material fact are in dispute on these points.  Quest states that the Contract provided for the initial scope of work to include drying equipment and LVI actually and/or impliedly agreed at the time to provide certain documentary and protective services for Quest's equipment, furniture and supplies.  Quest claims that it is undisputed that LVI failed to provide the promised services and LVI should be held liable for its negligence and failure to perform.  Quest further maintains that the indemnity clause language unambiguously requires that LVI indemnify Quest for any and all losses suffered by Quest due to LVI's breach of contract or negligence.  Moreover, Quest maintains that LVI's intentional actions such as understaffing and providing improperly skilled laborers clearly negate any

7

indemnity obligation of Quest because a party may not be indemnified for its intentional acts as a matter of public policy.

LVI and Commerce respond that it is untrue that LVI admitted that it breached express contractual terms or implied duties in the performance of its services as LVI only adopted certain claims as uncontested for purposes of another motion and expressly stated so in that motion. Thus, Quest cannot now claim that LVI does not dispute these claims for purposes of an entirely different motion. LVI and Commerce additionally incorporate arguments stated in their cross-motion.

**VI.   Law and Analysis**

As the Contract provides that Louisiana law applies to its interpretation (Contract 2, §13) and the Court has jurisdiction based on diversity, the Court looks to Louisiana law in resolving the present dispute. Louisiana Civil Code Article 2046 provides a general rule of contract construction: "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." A contract's words are interpreted using the "general prevailing meaning," and when words may have one than more meaning, the meaning that best comports with the contract's purpose applies. La. Civ. Code arts. 2047 & 2048.  Moreover, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code. art. 2050.  If the meaning of a provision is in doubt or is not easily ascertainable, the court looks to the contract's nature, equity, usages and the parties' conduct before and after the contract's formation. La. Civ. Code art. 2053.

These general rules of contract interpretation apply when interpreting indemnity

contracts.  *Sovereign Ins. Co. v. Texas Pipe Line Co.*, 488 So.2d 982, 984 (La. 1986) (citation omitted).  Further,

> [a] contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms.

*Polozola v. Garlock, Inc*., 343 So.2d 1000, 1003 (La. 1977) (citations omitted) (finding phrase "whether caused by [party's] negligence or otherwise, arising from any source" expressed intention to indemnify).

> When a contract of indemnity makes no express provisions for indemnification against the consequences of the indemnitee's negligence, and an unequivocal intention to so indemnify cannot be found after interpreting each contractual provision in light of the whole contract and the general rules of contract interpretation, the court will presume that the parties did not intend to hold the indemnitee harmless from such liability.

*Sovereign Ins. Co.*, 488 So.2d at 983.

In the present case, the Contract does not explicitly provide for a party's indemnification for its own negligence.  The Court disagrees with LVI and Commerce's contention that the first sentence of the indemnification paragraph provides a general indemnity provision and the second sentence provides a more specific indemnity provision, and that absent LVI and Commerce's interpretation, the second sentence would be rendered meaningless.  The first sentence contains a reciprocal indemnification obligation which requires that a party who breaches the Contract or is otherwise at fault indemnify the other party for any claims, demand, causes of action or liability that arises due to the breach of contract or fault of the indemnifying party.  The second sentence states that Quest will indemnify LVI for loss or damage to personal property during the performance of services.  Thus, the first sentence regards indemnifcation for the *indemnifying*

9

*party's* own actions, and the second sentence concerns indemnification for the *indemnified party's* actions.  Though the inclusion of the word "negligence" is not found to be decisive of the issue under Louisiana law, *see, e.g., Polozola v. Garlock, Inc.*, 376 So.2d 1009, 1015 (La. App. 1 Cir. 1979),  the second sentence does not explicitly state that the indemnification obligation applies "regardless of fault or liability" or "however caused," nor does it use broad and general terms without limitation such as "any" and/or "all claims," which Louisiana courts have in the past found to indicate an intent to indemnify for negligence.  *See id.* (finding statement that indemnity provided "from and against Any and all claims and causes of action and all losses therefrom, arising out of or in any way related to the performance" and "including without limitation" personal injury claims provided indemnification for negligence as language was "broad and general, virtually without limitation"); *Jennings v. Ralston Purina Co.*, 201 So.2d 168, 175 (La. App. 2 Cir. 1967) (finding that language providing indemnity for "any loss, damage or injury sustained by any person resulting from performance of this Contract" was clear and unequivocal in its comprehensiveness).

  In fact, to read the second sentence as LVI and Commerce suggest would in effect render the first sentence meaningless because it would nullify LVI's need to indemnify Quest for a claim, demand, causes of action, liability of any nature to the extent it related to personal property and/or content and was attributable to LVI's breach of contract or fault.

   Moreover, to hold that Quest must indemnify LVI in instances where damage arose from LVI's negligence does not comport with the clear purpose of the Contract as a whole and the parties' intent.  The goal of the Contract was to protect the very property that Quest claims was damaged or lost.  Though it makes sense that the parties would include an indemnification

provision providing that Quest indemnify LVI for property damage or loss that occurred while LVI performed its services using its "best efforts" in a workmanlike and non-negligent manner, it does not make sense that Quest would allow LVI to escape liability after intentionally or negligently destroying or losing the very thing it was paid to protect or salvage. Accordingly, the second sentence of the indemnity paragraph does not provide for indemnification of LVI for its own negligence.

Given this result, it is clear that LVI and Commerce's motion must be denied as Quest is not barred from asserting a claim for actual damages arising from LVI's negligence. Quest states that it is not alleging consequential damages, so the Contract provision barring consequential damages is not at issue. Though LVI claims that Quest's claims for breach of contract, intentional misrepresentation and fraud should be dismissed because these claims are defenses to LVI's now dismissed claim, summary judgment on these claims is not appropriate. Because LVI and Commerce only make this general statement and do not provide more detail, the Court will not grant summary judgment at this time on these other claims.

Regarding Quest's motion, it is clear that this motion should be partially granted, only in so far as it requests the Court to hold that LVI is required to indemnify Quest for direct and actual damages, if any, arising from LVI's breach of contract or negligence during its performance of services.[1] Quest additionally asks the Court to hold LVI liable for the damages it claims to have suffered. This assertion is based upon LVI's statement of uncontested facts filed with its motion for summary judgment on Quest's counterclaim. However, in LVI's statement of

---

[1] Quest also requested that the Court find that LVI must indemnify Quest for LVI's contract claim against Quest. As the parties have settled this claim, this is no longer an issue.

uncontested facts and in the memorandum accompanying that motion, LVI states that "it does not admit or concede that the adopted claims are uncontested for any purpose other than this motion," because it claims that even assuming these allegations to be true, Quest's counterclaim should be dismissed.  Additionally, LVI states that it "objects to, rejects and denies most of the said allegations of Quest, as indicated in pleadings it has previously filed therein."  (LVI Mem. in Mot. Summ. J. to Quest Counterclaim 3).  The Court does not find that these uncontested statements apply for any other purpose than LVI and Commerce's motion on Quest's counterclaim, and Quest has not submitted any other proof that no genuine issues of fact remain regarding whether LVI is liable due a breach of contract or negligence, or is otherwise at fault.

**VII.    Conclusion**

Accordingly, LVI and Commerce's Motion for Summary Judgment on Quest's Counterclaim is DENIED, and Quest's Motion for Summary Judgment on its Counterclaim is GRANTED on the issue of indemnity and DENIED on the issue of liability.

New Orleans, Louisiana, this  25th  day of April, 2007.

_____
UNITED STATES DISTRICT JUDGE